UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

ABOUBACAR K. DEMBELE,
                           Petitioner,

                  -v-

THOMAS DECKER, *in his official capacity as New York Field Office Director for U.S. Immigration and Customs Enforcement*, et al.,
                           Respondents.

18-CV-5070 (JPO)

OPINION AND ORDER

---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

      Petitioner Aboubacar K. Dembele, an immigrant to the United States, is currently detained without bond pending the outcome of removal proceedings against him. He filed this petition for a writ of habeas corpus, contending that his initial bond hearing violated his constitutional and statutory rights. Because Petitioner has failed to exhaust his administrative remedies, his petition is stayed pending the outcome of his administrative appeal.

**I.    Background**

      Petitioner Aboubacar K. Dembele, a native and citizen of the Ivory Coast, arrived in the United States in 1993 at age three. (Dkt. No. 18 ("Pet.") ¶ 2.) Since then, Dembele has not left the United States. (Pet. ¶ 2.) Dembele's mother and wife are U.S. citizens. (Pet. ¶ 2.)

      On February 8, 2018, following a court appearance in a criminal case pending against him, Dembele was arrested outside the courthouse by Immigration and Customs Enforcement ("ICE") agents. (Pet. ¶ 4.) Dembele's initial appearance before an Immigration Judge ("IJ") was scheduled for March 15, 2018. (Pet. ¶ 7.) On March 12, 2018, Dembele requested a bond hearing, which took place on March 15. (Pet. ¶ 8–9.)

1

At the bond hearing, the government submitted the following evidence of Dembele's alleged dangerousness to the community: (1) a disposition of arrest for turnstile-jumping in 2015, which was dismissed; (2) a guilty plea to disorderly conduct in Arkansas in 2011; (3) an FBI Repository Inquiry ("RAP Sheet"); (4) certain Facebook posts; and (5) an FBI memorandum about Petitioner. (Pet. ¶ 46–48.) The FBI memorandum included, among other things, an image of a white police officer having his throat cut from behind by a masked figure draped in an American flag, which Petitioner had shared on Facebook. (Dkt. No. 18-8 at 26.)

At Dembele's request, the bond hearing was adjourned to April 12, 2018, so that he could review the government's evidence. (Pet. ¶ 9.) Dembele filed objections to the government's evidence, arguing that the Facebook posts and FBI memorandum were inadmissible and included speech protected by the First Amendment. (Pet. ¶ 50.) After the bond hearing, the IJ denied bond in a written decision, which concluded that Dembele was a danger to the community based on (1) then-pending criminal charges of assault, menacing, and harassment; and (2) the Facebook image of the police officer. (Pet. ¶ 13; Dkt. No. 18-6 at 2–3.) The IJ raised concerns about the "serious allegations and charges" against Dembele in his criminal case, while acknowledging that the case was still pending.[1] (Dkt. No. 18-6 at 2.) The IJ also relied on the "extremely violent and graphic photograph that [Dembele] posted on Facebook," stating that she "takes seriously any threat against law enforcement officials, whether explicit or implicit." (Dkt. No. 18-6 at 2–3.)

On May 31, 2018, Dembele appealed the IJ's bond decision to the Board of Immigration Appeals ("BIA"). (Pet. ¶ 67.) On June 7, 2018, Dembele filed the present petition for a writ of

---

[1] Since the IJ rendered her decision, Dembele has pleaded guilty to disorderly conduct, and the assault, menacing, and harassment charges have been dismissed. (Dkt. No. 26.)

habeas corpus pursuant to 28 U.S.C. § 2241. The petition argues (1) that the IJ's consideration of Dembele's pending criminal charges violated his procedural due process rights (Pet. ¶¶ 76–90, 98–106); (2) that consideration of his Facebook post violated his First Amendment right to free speech (Pet. ¶¶ 91–95, 107–14); (3) that the government's interference with his pending criminal case violates his substantive due process rights (Pet. ¶¶ 115–18); and (4) that all of the above actions violated Section 706(2) of the Administrative Procedure Act (Pet. ¶¶ 119–24).

## II. Discussion

As a threshold matter, the government contends that the petition should be held in abeyance pending Dembele's BIA appeal. (Dkt. No. 23 at 8–16.) The government is correct that Dembele neither exhausted his administrative remedies nor sufficiently justified his failure to do so.

Under the scheme governing immigration bond proceedings, non-citizens have the right to appeal decisions by immigration judges to the BIA. *See* 8 C.F.R. § 1236.1(d)(3) ("An appeal relating to bond and custody determinations may be filed to the Board of Immigration Appeals . . . ."); *see also id.* §§ 1003.19(f), 1003.38(a), 1003.1(b). There is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus; however, such exhaustion is generally required as a prudential matter. *See Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014) ("Since Congress is silent on the issue, courts have applied a judicially created requirement that, generally, a petitioner must exhaust his administrative remedies before seeking federal court intervention."); *see generally Howell v. I.N.S.*, 72 F.3d 288, 291 (2d Cir. 1995) ("Under the doctrine of exhaustion of administrative remedies, 'a party may not seek federal judicial review of an

adverse administrative determination until the party has first sought all possible relief within the agency itself.'" (quoting *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 740 (2d Cir. 1992))).

Under this prudential exhaustion doctrine, courts routinely defer decision on habeas petitions filed during the pendency of a BIA appeal. *See Paz Nativi v. Shanahan*, No. 16 Civ. 8496, 2017 WL 281751, at *2 (S.D.N.Y. Jan. 23, 2017) (collecting cases). Nonetheless, this exhaustion requirement "may be excused where: '(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.'" *Id.* (quoting *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003)).

Dembele first argues that exhaustion should be excused because he will suffer irreparable injury without judicial intervention. (Dkt. No. 25 at 9–10.) It is true that "even minimal impairments" on the First Amendment right to free speech "create irreparable injury." *See Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996). Therefore, the Court addresses Dembele's First Amendment claim without requiring exhaustion.

Dembele contends that the IJ violated his First Amendment rights by relying upon his "constitutionally-protected speech"—the Facebook image of the police officer—to conclude that he poses "a danger to the community." (Pet. ¶ 93.) Having reviewed the image in question (Dkt. No. 18-8 at 26), the Court notes that it is fairly tenuous evidence of dangerousness: though no doubt graphic, shocking, and perhaps disturbing, it is a rendering by an artist (not Dembele) with a political message. But the relative strength of the evidence is not before the Court. The only issue at this stage is whether the IJ's treatment of this evidence violated Dembele's First Amendment rights.

Regardless of the merits of the message it conveys, the image from Dembele's Facebook falls far short of a "true threat" or an incitement to violence, both of which stand beyond the bulwarks of First Amendment protection. *See generally Virginia v. Black*, 538 U.S. 343, 359 (2003). Nonetheless, the IJ's treatment of Dembele's protected speech did not violate the First Amendment in this case. *Cf. United States v. Jordan*, No. 16 Cr. 93-G, 2017 WL 9516819, at *6 (W.D.N.Y. July 14, 2017) (denying motion to dismiss indictment because genuine factual dispute existed as to whether Facebook post was protected speech or "true threat"), *report and recommendation adopted*, No. 16 Cr. 93, 2017 WL 4784317 (W.D.N.Y. Oct. 24, 2017).

In the criminal context, "multiple courts have relied on a defendant's statements in concluding that the defendant should be detained pending trial." *United States v. Daniels*, No. 18 Cr. 005-D, 2018 WL 620537, at *6 (N.D. Tex. Jan. 30, 2018) (collecting cases); *see also United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) (holding that defendant's First Amendment rights were not implicated when the court admitted evidence from his social media account, including a rap video and tattoo images). Indeed, in *Daniels*, the court approved of a magistrate judge's consideration of evidence similar to Dembele's Facebook post. *See* 2018 WL 620537, at *1 (discussing defendant's Facebook activity, including posting "a photograph of . . . a suspect in the death of a Memphis police officer—with th[e] caption: 'Salute a real hero!'" and other "posts applauding the July 7, 2016 ambush and killing of five Dallas police officers").

The Court sees no reason to treat this immigration bond decision differently from the cases involving criminal pretrial detention. Here too, the IJ did not "seek merely to punish [Petitioner] for his beliefs or statements about his beliefs. Rather, . . . it is his conduct, or possible conduct, that is ultimately at issue, and his statements are relevant only to the extent that

5

they reflect on that conduct." *United States v. Ervin*, 818 F. Supp. 2d 1314, 1317 (M.D. Ala. 2011). The IJ did not violate Dembele's First Amendment rights.

Dembele's remaining arguments in favor of excusing the normal exhaustion requirement are without merit.

First, with the exception of his First Amendment claim, Dembele is unable to identify any other potential irreparable harm. (Pet. ¶ 27.) The Court recognizes that his continued detention without bond seriously intrudes on his individual liberty; nonetheless, it is well established that "continued detention," standing alone, "is insufficient to qualify as irreparable injury justifying non-exhaustion." *Paz Nativi v. Shanahan*, 2017 WL 281751, at *2.

Second, Dembele's remaining constitutional claims neither allege irreparable harm nor raise substantial constitutional questions that could not be addressed by the BIA. *See Paz Nativi*, 2017 WL 281751, at *3 ("[B]ecause [Petitioner's] constitutional claims could be mooted by a BIA decision setting a reduced bond or remanding for further bond-determination proceedings, and because his procedural due process claim could also be addressed head-on by the BIA, there is insufficient justification to excuse [him] from the exhaustion requirement here."); *see also Cepeda v. Shanahan*, No. 15 Civ. 9446, 2016 WL 3144394, at *2 n.1 (S.D.N.Y. Apr. 22, 2016) ("Although the BIA 'does not have jurisdiction to adjudicate constitutional issues,' it can review, and reverse, the IJ's bond determination," which "would render disposition of [Petitioner's] constitutional concerns unnecessary." (internal citations omitted) (quoting *United States v. Gonzalez-Roque*, 301 F.3d 39, 48 (2d Cir. 2002))).

Third, and finally, Dembele's contention that his appeal is futile is wholly conclusory (Dkt. No. 18 at ¶ 28); there is no evidence, besides a *pro forma* citation to *In re Guerra*, 24 I. & N. Dec. 37 (B.I.A. 2006) (outlining non-exhaustive list of bond determination factors), to support

the contention that BIA review would be futile here. (*Id.*; Dkt. No. 25 at 10.) To the contrary, the fact that his BIA appeal "could potentially moot [his] habeas petition counsels for the Court to stay its hand until the exhaustion of administrative review in the name of preserving scarce judicial resources and avoiding the possibility of duplicative or conflicting rulings." *Paz Nativi*, 2017 WL 281751, at *2.

Dembele has not adequately justified his failure to satisfy the prudential exhaustion requirement. He must exhaust his administrative remedies before pursuing habeas relief in this Court.

### III. Conclusion

This petition is stayed pending resolution of Petitioner's appeal to the BIA. The parties shall submit a status report to the Court at least every three months, and shall promptly report the outcome of the BIA appeal to the Court following the issuance of any decision by the Board.

SO ORDERED.

Dated: October 9, 2018
      New York, New York

_____
J. PAUL OETKEN
United States District Judge